FILED
JAMES BONINI
CLERK

2012 AUG 17 PM 3:03

U.S. DISTRICT COURT
SOUTHERN DIST.OHIO
EAST. DIV. COLUMBUS

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | |
|---|---|
| J. ROBERT SMITH, Individually, and On Behalf of All Others Similarly Situated, | ) No.  3 : 12 cv 281 |
| | ) JUDGE BLACK |
| Plaintiff, | ) |
| vs. | ) CLASS ACTION |
| | ) |
| ROBBINS & MYERS, INC., PETER C. WALLACE, THOMAS P. LOFTIS, RICHARD J. GIROMINI, STEPHEN F. KIRK, ANDREW G. LAMPEREUR, DALE L. MEDFORD, ALBERT J. NEUPAVER, NATIONAL OILWELL VARCO, INC. and RAVEN PROCESS CORP., | ) |
| | ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

MEYER WILSON CO., LPA
MATTHEW R. WILSON
BRIDGET M. WASSON
Dublin Road, Suite 100
Columbus, OH 43215
Telephone: 614/224-6000
614/224-6066 (fax)

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484/588-5516
484/450-2582 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
STUART A. DAVIDSON
CULLIN A. O'BRIEN
120 East Palmetto Park Rd., Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
– and –
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Plaintiff, by his attorneys, for this Complaint for Breach of Fiduciary Duties, alleges as follows:

1.    This is a class action brought by plaintiff on behalf of the holders of Robbins & Myers, Inc. ("R&M" or the "Company") common stock against R&M, its Board of Directors ("Board"), National OilWell Varco, Inc. ("NOVI") and NOVI's wholly owned subsidiary Raven Process Corp. ("Merger Sub") arising out of their breaches of fiduciary duty, and/or aiding and abetting those breaches, in connection with the Board's decision to sell the Company to NOVI via an inherently unfair process designed to ensure that NOVI, and only NOVI, participates in R&M's robust and improving financial condition (the "Proposed Transaction").

2.    On August 9, 2012, R&M, Merger Sub and NOVI announced they entered into an agreement (the "Merger Agreement") under which NOVI will acquire R&M in an all cash transaction that values Robbins & Myers at approximately $2.5 billion. R&M, Merger Sub and NOVI entered into the Merger Agreement, providing for the merger of Merger Sub with and into the Company (the "Merger"), with the Company surviving the Merger as a wholly owned subsidiary of NOVI. At the effective time of the Merger, each share of Company common stock issued and outstanding will be automatically cancelled and converted into the right to receive $60.00 in cash (the "Merger Consideration").

3.    The Proposed Transaction is the product of a fundamentally flawed process that is designed to ensure the acquisition of R&M by NOVI on terms preferential to NOVI and R&M's Board members, but detrimental to plaintiff and the other public stockholders of R&M. Among other things, defendants have locked up the transaction with preclusive deal protection measures that thwart the prospect of a topping bidder and R&M shareholders from maximizing their equity stake in the Company.

4.        Combining these two companies will consolidate NOVI's position as a supplier of blowout preventers, which can shut off wells in an emergency. R&M is already the fourth-largest maker of blowout preventers for drilling rigs on land, he estimated. NOVI is the second largest. Together, they will be one of the largest suppliers, if not the largest supplier, of blowout preventers.

5.        Because defendants dominate and control the business and corporate affairs of R&M and are in possession of non-public corporate information concerning R&M's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of R&M, which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

6.        Indeed, the Merger consideration significantly undervalues the Company and its performance and is merely an attempt by NOVI to acquire R&M at a discount.

7.        Simply put, in pursuing the unlawful plan to sell R&M to NOVI at a discount, each of the defendants violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing.

8.        This action seeks equitable relief only, specifically to require R&M's Board to uphold their fiduciary duties to the Company's public stockholders.

### JURISDICTION AND VENUE

9.        This Court has jurisdiction pursuant to 28 U.S.C. §1332 because plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.       This Court has jurisdiction over defendants because R&M is incorporated in Ohio and each defendant is either a corporation that conducts business in and maintains operations within this

- 2 -

District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper under 28 U.S.C. §1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

12.     Plaintiff J. Robert Smith is, and at all times relevant hereto was, a shareholder of R&M. Plaintiff Smith is a citizen of the State of Arizona.

13.     Defendant R&M is an Ohio corporation with its principal place of business located at 10586 Highway 75 N Willis, Texas 77378. R&M's stock is traded on the NYSE under the ticker "RBN." According to R&M's quarterly report filed on June 26, 2012, as of May 31, 2012, there were over 40 million shares outstanding. R&M is a citizen of the States of Ohio and Texas.

14.     Defendant Peter C. Wallace ("Wallace") has served on the Board at all relevant times and is currently the President and Chief Executive Officer ("CEO") of R&M. Wallace also serves as a director at Applied Industrial Technologies, Inc. Wallace is a citizen of the State of Florida.

15.     Defendant Thomas P. Loftis ("Loftis") has served on the Board at all relevant times and is currently the Chairman of the Board. Loftis is the President of Midland Properties. Loftis is a citizen of the State of Ohio.

16.     Defendant Richard J. Giromini ("Giromini") has served on the Board at all relevant times and is also a member of the Audit Committee and the Nominating & Governance Committee. Giromini is the President & Chief Executive Officer of Wabash National Corporation. Giromini is a citizen of the State of Indiana.

17.     Defendant Stephen F. Kirk ("Kirk") has served on the Board at all relevant times and is also a member of the Compensation Committee and the Nominating & Governance Committee.

Kirk is the Senior Vice President & Chief Operating Officer of The Lubrizol Corporation. Kirk is a citizen of the State of Ohio.

18.     Defendant Andrew G. Lampereur ("Lampereur") has served on the Board at all relevant times and is also a member of the Audit Committee and the Nominating & Governance Committee. Lampereur is the Executive Vice President & Chief Financial Officer of Actuant Corporation. Lampereur is a citizen of the State of Wisconsin.

19.     Defendant Dale L. Medford ("Medford") has served on the Board at all relevant times and is also a member of the Audit Committee and the Nominating & Governance Committee. Previously, Medford was the Executive Vice President & Chief Financial Officer of Reynolds & Reynolds Company. Medford is a citizen of the State of Ohio.

20.     Defendant Albert J. Neupaver ("Neupaver") has served on the Board at all relevant times and is also a member of the Audit Committee and the Nominating & Governance Committee. Neupaver is the President & Chief Executive Officer of Wabtec Corporation and also serves as a director at Koppers, Inc. Neupaver is a citizen of the State of Pennsylvania.

21.     The defendants named above in ¶¶14-20 are sometimes collectively referred to herein as the "Individual Defendants."

22.     Defendant NOVI is a Delaware corporation with its principal place of business located at 1000 Richmond Avenue, Houston, Texas 77042. NOVI's stock is traded on the NYSE under the ticker "NOV." NOVI is the largest U.S. maker of oilfield equipment in the United States. NOVI is a citizen of the State of Texas.

23.     Defendant "Merger Sub" is an Ohio Corporation, a vehicle through which defendants seek to effectuate the Proposed Transaction and a wholly-owned subsidiary of NOVI. Merger Sub is a citizen of the State of Ohio.

## DEFENDANTS' FIDUCIARY DUTIES

24.     Under applicable law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors and/or officers may not take any action that:

        (a)     adversely affects the value provided to the corporation's shareholders;

        (b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

        (c)     contractually prohibits themselves from complying with their fiduciary duties;

        (d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

        (e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

25.     In accordance with their duties of loyalty and good faith, defendants, as directors and/or officers of R&M, are obligated under applicable law to refrain from:

        (a)     participating in any transaction where the directors' or officers' loyalties are divided;

        (b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

26.     Plaintiff alleges herein that defendants, separately and together, in connection with the Merger, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, candor, good faith and independence owed to plaintiff and other public shareholders of R&M. Defendants stand on both sides of the transaction, are engaging in self dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by plaintiff or the Class, and choosing not to provide shareholders with all information necessary to make an informed decision in connection with the Merger. As a result of defendants' self dealing and divided loyalties, neither plaintiff nor the Class will receive adequate or fair value for their R&M common stock in the Proposed Transaction.

27.     Because defendants are knowingly or recklessly breaching their duties of loyalty, good faith and independence in connection with the Merger, the burden of proving the inherent or entire fairness of the Merger, including all aspects of its negotiation, structure, price and terms, is placed upon defendants as a matter of law.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action individually and as a class action on behalf of all holders of R&M stock who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

29.     This action is properly maintainable as a class action.

30.     The Class is so numerous that joinder of all members is impracticable. According to R&M's SEC filings, as of May 31, 2012, there were over 40 million shares outstanding, held by hundreds, if not thousands, of beneficial holders.

31. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a) whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class in connection with the Merger;

(b) whether the Individual Defendants are engaging in self dealing in connection with the Merger;

(c) whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Merger;

(d) whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of R&M;

(e) whether the Individual Defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Merger, including the duties of good faith, diligence, honesty and fair dealing;

(f) whether the Individual Defendants have breached their fiduciary duties of candor to plaintiff and the other members of the Class in connection with the Merger by failing to disclose all material information concerning the Merger;

(g) whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(h) whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

(i)      whether NOVI is aiding and abetting the wrongful acts of the Individual Defendants.

32.      Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

33.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

34.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

35.      Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

36.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FACTUAL BACKGROUND

37.      R&M is a leading supplier of engineered equipment and systems for critical applications in global energy, industrial, chemical and pharmaceutical markets. R&M operates primary businesses in 15 countries. The majority of R&M's products, systems and services are sold in the oil & gas, chemical and pharmaceutical market sectors. A list of the markets served follows:

•Oil & Gas; •Chemical; •Cosmetics; •Pharmaceutical; •Biotechnology; •Biofuels;
•Food; •Semiconductor; •Water & Wastewater Treatment; •Flue Gas Desulfurization;
•Pulp & Paper; •Mineral Processing; and •Polymer/Plastics

38.     R&M has performed well for its investors.  On August 9, 2010, R&M's stock traded at $23.99 and on August 8, 2012, before the announcement of the Proposed Transaction, R&M was trading at $46.80.  In two years, the stock price gained over 150%:



39.     The Company has had an earnings growth rate of over 20% for the past five years and analysts estimate double-digit earnings growth for the next five years as well.  All indications are that the Company is poised for future success and the market reflected that sentiment.

40.     For instance, on June 26, 2012, R&M announced its Third Quarter 2012 results:

Consolidated sales were $266 million in the third quarter of 2012 as compared with $237 million in the third quarter of 2011.  Excluding the impact of currency translation sales grew $34 million, or 14%, over the prior year period.  The Company reported third quarter 2012 orders of $286 million, an increase of 10% over the prior year period excluding the impact of currency translation.  Third quarter ending backlog increased to $315 million, up from $301 million at the end of the second quarter and $248 million at the end of the third quarter of the prior year.  Each of Robbins & Myers' business platforms achieved solid growth.

Third quarter 2012 earnings before interest and taxes (EBIT) were $62 million, including a $2 million favorable legal settlement, and significantly higher than the adjusted EBIT of $47 million reported in the third quarter of 2011.  EBIT margin of 23.2% in the third quarter of 2012 was substantially higher than the 19.8% adjusted EBIT margin in the prior year period, as a result of improved profitability in each business platform and 70 basis points from the legal settlement.  The Company reported EBITDA of $69 million in the third quarter of 2012, compared with adjusted EBITDA of $54 million in the third quarter of fiscal 2011.  Each business segment showed improved profitability as a result of additional volume, and the Process & Flow Control group benefitted from price and cost improvements.

41.     The Company was growing with reported EBITDA of $69 million in the third quarter of 2012, compared with adjusted EBITDA of $54 million in the third quarter of fiscal 2011. Each business segment showed *improved profitability* as a result of additional volume, and the Process & Flow Control group benefitted from price and cost improvements.

42.     R&M generated $61 million of cash from operating activities in the third quarter of fiscal 2012 compared with $39 million in the prior year same quarter.

43.     Likewise, on March 27, 2012, R&M Announced its Second Quarter 2012 results:

Consolidated sales were $256 million in the second quarter of 2012 as compared with $184 million in the second quarter of 2011. Excluding the impact of currency translation and T-3, sales grew 24% over the prior year period. The Company reported second quarter 2012 orders of $294 million, which included orders of $96 million for T-3. Excluding the impact of currency translation and T-3, orders increased 35% over the prior year period. Second quarter ending backlog was $301 million, compared to $221 million at the end of the prior year period and $260 million at the end of the prior quarter. Each of Robbins & Myers' business segments achieved strong growth.

44.     Once again, R&M achieved strong growth with ending order backlog of $301 million, compared to $221 million at the end of the prior year period and $260 million at the end of the prior quarter.

45.     In the 2011 annual report, the CEO told shareholders that "by every measure – financial and strategic – Robbins & Myers had a tremendous year as we established a higher level of performance across the Enterprise."

46.     It was also reported in the Company's 2011 annual report that operating profit increased 890 basis points over the previous year:

## STRONG MARKETS, STRONG EXECUTION

Fiscal 2011 started strong and continued to gain momentum as our businesses experienced significant growth in sales, orders, margins and cash flow during the 12-month period. Consolidated operating profit as a percentage of sales, excluding special items, increased 890 basis points over the previous year and climbed above 19 percent for the first time in at least 25 years. Earnings more than doubled year-over-year to reach $2.38 per share, excluding special items such as the gain from the sale of Romaco, restructuring-related costs and the one-time costs relating to the acquisition of T-3 Energy Services. Cash from operating activities exceeded $100 million, and we finished the year with $231 million of cash and virtually no debt.

47.     To be sure, R&M's CEO has been very vocal with regards to R&M and the fact it has exceeded all expectations. Moreover, the CEO himself acknowledges that R&M continues to meet and exceed shareholder expectation, the achievements to date are just the beginning, and R&M continues to justify higher trading multiples. What follows is "A Conversation With Peter Wallace" which is posted on R&M's website:

Q.      What has driven Robbins & Myers' success?

A:      We began our transformation with a few simple themes – reduce complexity, manage those things that are under our control, and create an environment where people are rewarded for their passion and ability to continuously improve the business.

Now, a few years later, we have surpassed just about everyone's expectations – and we still have a lot happening that will drive further improvements.

Q:      Where can the business go from here?

A:      We firmly believe that our achievements to-date are Just the Beginning, the theme we are using throughout our company. Given the success we have had, some of you may be wondering what I could possibly mean by this. After all, we have had great performance and it is difficult to keep improving the business.

While I agree that higher sales levels, higher operating profit margins, and improved cash flow will make a quantum leap more difficult; it is also clear that we have numerous activities underway that will improve our results. We have a lot of

- 11 -

positive momentum that will continue to drive higher sales volume and produce improved operating margins.

Q. How have shareholders responded to Robbins & Myers transformation?

A: We continue to meet or exceed the guidance provided to the investment community and our performance has attracted a wider following. This additional interest has increased the daily volume of trading activity which, in turn, helps attract others to the stock. Our trading volume and share price have steadily increased over the last few years. Investors reward companies that consistently deliver the numbers and have plans in place to improve future performance. Our results have justified higher trading multiples due to the fact we now have a reputation for producing results – doing what we said we would do.

We have several positives currently in our favor. All our platform businesses are profitable and have shown steady improvement during the last two years. End-markets are healthy and with approximately 80% of our sales into the energy, chemical, and pharmaceutical sector, we believe that we are in the right place at the right time. Another item of great importance is that we have moved from a high debt position of a few years ago, to our current status of having more cash than debt. This net cash position will be valuable as we continue to move forward with the growth phase of our transformation, as we fund internal growth plans as well as acquisitions.

## THE PROPOSED TRANSACTION

48. On August 9, 2012, the Company issued a press release announcing the Proposed

Transaction:

. . . Robbins & Myers, Inc. and National Oilwell Varco, Inc. have entered into an agreement under which National Oilwell Varco will acquire Robbins & Myers in an all cash transaction that values Robbins & Myers at approximately $2.5 billion. Under the agreement, Robbins & Myers' shareholders will receive $60.00 per share in cash in return for each of the approximately 42.4 million shares outstanding ("the Transaction"). The Boards of Directors of National Oilwell Varco and Robbins & Myers have unanimously approved the transaction, which is subject to customary closing conditions, including the approval of two-thirds of Robbins & Myers shareholders. Closing would be expected to occur in the fourth quarter of calendar 2012.

Robbins & Myers' largest shareholder, M.H.M. & Co., Ltd, which owns approximately 10% of the outstanding common shares of Robbins & Myers ("Common Stock") has agreed to vote its Common Stock in favor of the Transaction in accordance with the terms of a support agreement entered into in respect of the Transaction. The support agreement will terminate in the event the merger agreement is terminated in accordance with recommendation of the Board of Robbins & Myers.

- 12 -

Mr. Pete Miller, Chairman, President and CEO of National Oilwell Varco, remarked, "Robbins & Myers has many complementary products with those National Oilwell Varco currently offers the industry. I am particularly enthusiastic about the prospect of incorporating their downhole tools, pumps and valves into National Oilwell Varco Petroleum Services & Supplies and Distribution & Transmission segments. We feel that our combined manufacturing infrastructure and portfolios of technology will further advance our presence in the oil and gas markets we serve. We are extremely excited about this combination and look forward to welcoming a very talented group of employees into the National Oilwell Varco family."

Mr. Pete Wallace, President and Chief Executive Officer of Robbins & Myers, commented, "Robbins & Myers Board of Directors believes that the proposed transaction with National Oilwell Varco represents a compelling value for our shareholders. This transaction allows Robbins & Myers to join forces with an industry leader that will enable its business segments to fully capitalize on their respective strategies, enhance leadership positions in niche applications, and execute growth plans at a faster pace. We have worked hard to create a focused business with reduced complexity and a culture of continuous improvement, all based on improving customer productivity and profitability. This is the right time for this transaction and I believe National Oilwell Varco is the right partner to take us to the next level of performance."

National Oilwell Varco, headquartered in Houston, Texas, is a worldwide leader in the design, manufacture and sale of equipment and components used in oil and gas drilling and production operations, the provision of oilfield services, and supply chain integration services to the upstream oil and gas industry.

49.    In light of R&M's impressive performance and growth, R&M is in a position where it can effectively bargain in order to receive higher bids for the Company, as the directors' fiduciary duties demand.

50.    Combining these two companies will consolidate NOVI's position as a global supplier of blowout preventers. R&M is already the fourth-largest maker of blowout preventers for drilling rigs on land and NOVI is the second. Together, they will be one of the largest, if not the largest, supplier of blowout preventers in the world.

51.    The timing of the Proposed Transaction is also convenient. In fact, lawmakers eager to prevent another oil spill in the Gulf of Mexico have been insisting on new standards for blowout preventers, a last line of defense against runaway wells. Federal regulators at the Interior

Department are also debating new rules that could boost the chances the 450-ton safety devices would stop a blowout by shearing through pipe and cutting off the oil and natural gas.

52.     Brian Uhlmer, an analyst at Global Hunter Securities LLC in Houston who rates R&M and NOVI a buy, commented that R&M is the fourth-largest maker of blowout preventers for drilling rigs on land and he estimated NOVI to be the second. In response to news about the Proposed Transaction, Uhlmer said this is a departure for NOVI which "usually likes fixer-uppers," and R&M "is pretty well fixed up. Not a lot to improve and squeeze out."

53.     Indeed, R&M is growing and expanding and the Proposed Transaction ignores this reality.

54.     The Merger Agreement locks the Company into the takeover, precluding the possibility of topping bids. There are termination fee triggers for the Company to pay NOVI as high as $75 million. There is a no shop provision preventing the Company to solicit alternative proposals. There is a reaffirmation provision requiring the Company to reaffirm support for the Proposed Transaction in the event there is a tender offer. There are critical information and matching rights for NOVI were a topping bidder to emerge. The layering effect of these and other deal protection devices thwart the possibility of a topping bidder and deprives the Company's shareholders from receiving proper value for their shares through a fair and impartial process, binding the Company's shareholder to the takeover by NOVI.

55.     The Proposed Transaction is the product of a hopelessly flawed process that is designed to ensure the sale of R&M to NOVI on terms preferential to defendants and other R&M insiders at the expense of the interests of plaintiff and the other public stockholders of the Company.

56.     By abusing their power as directors and officers, defendants are attempting to strategically subvert the interests of plaintiff and the other public shareholders of R&M and/or have aided and abetted in the same. Thus, plaintiff seeks to enjoin the Proposed Transaction.

- 14 -

57.     If consummated, the Proposed Transaction will likely result in R&M's shareholders losing their interest in the Company through a fraudulent process designed to inhibit other potential bidders in favor of NOVI. Unless enjoined by this Court, defendants will continue to breach and/or aid the breaches of fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Transaction, which will deprive Class members of a fair and non-fraudulent sales process, all to the irreparable harm of plaintiff and the Class.

58.     As such, plaintiff and the class of R&M shareholders are irreparably injured and have no adequate remedy at law.

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

59.     Plaintiff repeats and realleges each allegation set forth herein.

60.     Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, candor and independence owed to the public shareholders of R&M and have acted to put their personal interests and the interest of NOVI ahead of the interests of R&M's shareholders.

61.     By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in R&M.

62.     Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties by entering into a transaction with NOVI without regard to the fairness of the transaction to R&M's shareholders and by failing to disclose all material information concerning the Merger to such shareholders.

63.     As demonstrated by the allegations above, defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of R&M because, among other reasons:

(a)     they failed to take steps to maximize the value of R&M to its public shareholders to cap the price of R&M's stock and to give defendants an unfair advantage, by, among other things, failing to solicit other potential acquirors or alternative transactions;

(b)     they failed to properly value R&M;

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Merger; and

(d)     they failed to disclose all material information that would permit R&M's stockholders to cast a fully informed vote on the Merger.

64.     Because defendants dominate and control the business and corporate affairs of R&M, and are in possession of private corporate information concerning R&M's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of R&M which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

65.     By reason of the foregoing acts, practices and course of conduct, defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

66.     Unless enjoined by this Court, defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Transaction which will exclude the Class from the maximized value they are entitled to all to the irreparable harm of the Class.

67. Defendants are engaging in self dealing, are not acting in good faith toward plaintiff and the other members of the Class, and knowingly or recklessly have breached and are continuing to breach their fiduciary duties to the members of the Class.

68. As a result of defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive the real value of their equity ownership of the Company. Unless the Proposed Transaction is enjoined by the Court, defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Merger terms, and will not supply to R&M's minority stockholders sufficient information to enable them to cast informed votes on the Proposed Transaction and may consummate the Proposed Transaction, all to the irreparable harm of the members of the Class.

69. Plaintiff and the members of the Class have an inadequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

### COUNT II

### Aiding & Abetting the Individual Defendants' Breach of Fiduciary Duty Against Defendant NOVI

70. Plaintiff repeats and realleges each allegation set forth herein.

71. Defendant NOVI is sued herein as aiders and abetters of the breaches of fiduciary duties outlined above by the Individual Defendants, as members of the Board of R&M.

72. The Individual Defendants breached their fiduciary duties of good faith, loyalty, due care and candor to the R&M shareholders by failing to:

73. fully inform themselves of the market value of R&M before entering into the Merger Agreement;

74. act in the best interests of the public shareholders of R&M common stock;

- 17 -

75.     maximize shareholder value;

76.     obtain the best financial and other terms when the Company's independent existence will be materially altered by the Merger Agreement;

77.     act in accordance with their fundamental duties of good faith, due care and loyalty;

78.     put the shareholders' best interests above those of the Individual Defendants; and

79.     disclose all material information concerning the transaction to enable R&M's shareholders to cast informed votes on the Merger.

80.     Such breaches of fiduciary duties could not and would not have occurred but for the conduct of defendant NOVI, which, therefore, aided and abetted such breaches via entering into the merger agreement with each other.

81.     Defendant NOVI had knowledge that it was aiding and abetting the Individual Defendants' breach of their fiduciary duties to the R&M shareholders.

82.     Defendant NOVI rendered substantial assistance to the Individual Defendants in their breach of their fiduciary duties to the R&M shareholders.

83.     As a result of defendant NOVI's conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares and will not be able to cast informed vote with all material information concerning the Proposed Transaction.

84.     As a result of the unlawful actions of defendant NOVI, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for R&M's assets and business, will be prevented from obtaining the real value of their equity ownership in the Company, and will be voting on the basis of inadequate and incomplete information concerning the Proposed Transaction. Unless the actions of defendant NOVI are enjoined by the Court, they will

- 18 -

continue to aid and abet the Individual Defendants' breach of their fiduciary duties owed to plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

85.     Plaintiff and the other members of the Class have no adequate remedy at law.

86.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against defendants. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C.     Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Merger, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

D.     Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of R&M's shareholders until the process for the sale or auction of the Company is completed and the highest possible value is obtained;

E.     Rescinding, to the extent already implemented, the Merger or any of the terms thereof;

F.     Implementation of a constructive trust, in favor of plaintiff, upon any benefits improperly received by defendants as a result of their wrongful conduct;

G. Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H. Granting such other and further equitable relief as this Court may deem just and proper.

DATED: August 17, 2012

MEYER WILSON CO., LPA
MATTHEW R. WILSON

_____
MATTHEW R. WILSON (Ohio Bar #0072925)

BRIDGET M. WASSON (Ohio Bar #0084457)
Dublin Road, Suite 100
Columbus, OH 43215
Telephone: 614/224-6000
614/224-6066 (fax)
Email: mwilson@meyerwilson.com
Email: bwasson@meyerwilson.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
STUART A. DAVIDSON
CULLIN A. O'BRIEN
120 East Palmetto Park Rd., Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
Email: sdavidson@rgrdlaw.com
Email: cobrien@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
Email: randyb@rgrdlaw.com
Email: ricka@rgrdlaw.com
Email: dwissbroecker@rgrdlaw.com

- 20 -

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA  19087
Telephone:  484/588-5516
484/450-2582 (fax)
Email:  rmaniskas@rmclasslaw.com

(attorneys not admitted in Ohio to file *pro hac vice*)

Attorneys for Plaintiff