UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| J. ROBERT SMITH, individually and on behalf of all others similarly situated, | : : : | Case No. 3:12-cv-281 |
| Plaintiff, | : : | Judge Timothy S. Black |
| vs. | : : | |
| ROBBINS & MEYERS, INC., *et al.*, | : : | |
| Defendants. | : | |

**ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION (Doc. 78)
AND DISMISSING THIS CASE FOR LACK OF ARTICLE III STANDING**

_____

This civil action is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 78) and the parties' responsive memoranda (Docs. 80, 81).[1]  Also pending is Plaintiff's motion for class certification.  (Doc. 77).

## I.  BACKGROUND FACTS

Plaintiff J. Robert Smith filed his original complaint on August 17, 2012, seeking to proceed individually and on behalf of a class of all other R&M shareholders against

---

[1] Defendants include Robbins & Myers, Inc. ("R&M"), Peter C. Wallace, Thomas P. Loftis, Richard J. Giromini, Stephen F. Kirk, Andrew G. Lampereur, Dale L. Medford, Albert J. Neupaver, National Oilwell Varco, Inc. ("NOVI"), and Raven Process Corp. (collectively, "Defendants").

1

Defendants for breach of fiduciary duty under Ohio law.[2] (Doc. 2). The allegations stem from a merger agreement between R&M and NOVI announced on August 9, 2012. The announcement provided that the corporations had "entered into an agreement under which National OilWell Varco will acquire Robbins & Myers in an all cash transaction that values Robbins & Myers at approximately $2.5 billion." (*Id.* at ¶ 48). As a result, R&M shareholders were to receive $60.00 per share for each of the approximately 42.4 million outstanding shares. (*Id.* at ¶¶ 2, 48).

Plaintiff alleged that Defendants, as Directors of R&M, breached their fiduciary duties to R&M shareholders in approving the agreement. Plaintiff claimed that the agreement was the result of a fundamentally flawed process and would result in NOVI acquiring R&M at a discount, thereby preventing R&M shareholders from receiving adequate value for their shares. (Doc. 2 at ¶¶ 3, 6, 26). Plaintiff further alleged that Defendants failed to solicit other bids, and that the terms of the agreement effectively precluded a third party from subsequently making a higher bid commensurate with the company's true value. (*Id.* at ¶¶ 3, 49, 54). The proposed transaction was subject to approval by two-thirds vote of R&M shareholders, and Plaintiff alleged that Defendants were withholding information necessary for him and the other shareholders to make an informed decision on whether to approve the proposed transaction. (*Id.* at ¶¶ 26, 48, 57,

---

[2] Plaintiff also pled a claim for aiding and abetting claim against NOVI, but withdrew the claim after Defendants filed their joint motion to dismiss his third amended complaint. (Doc. 64 at 3 n.1). Plaintiff appears to have retroactively withdrawn the claim because his memorandum contra refers exclusively to the breach of fiduciary duty claim in his original complaint. (Doc. 80 at 8-9).

2

62, 68). Finally, Plaintiff alleged that Defendants engaged in self-dealing by accepting personal financial benefits in exchange for approving the merger agreement. (*Id.* at ¶ 26).

The original complaint expressly requested "equitable relief only, specifically to require R&M's Board to uphold their [*sic*] fiduciary duties to the Company's public stockholders." (Doc. 2 at ¶ 8). The original complaint further indicated that Plaintiff "seeks to enjoin the Proposed Transaction" and "seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against defendants." (*Id.* at ¶¶ at 56, 86). The prayer for relief "demand[ed] injunctive relief" and sought an injunction to enjoin the shareholder vote and closing of the transaction, a declaration that Defendants had breached their fiduciary duties in approving the merger agreement and directing Defendants to exercise their fiduciary duties to obtain a higher bid, the imposition of a constructive trust, and "other and further equitable relief." (*Id.* at ¶¶ A-H).

Plaintiff sought to proceed on behalf of a class consisting of all R&M shareholders for the ongoing harm to their interests in the corporation. (Doc. 2 at ¶ 28). The original complaint provided that Plaintiff "is, and at all times relevant hereto was, a shareholder of R&M." (*Id.* at ¶ 12). Plaintiff filed a first amended complaint on September 25, 2012, which pled additional claims for violations of federal securities law based on a Preliminary Proxy Statement filed by R&M on August 31, 2012. (Doc. 13). As required by the Private Securities Litigation Reform Act ("PSLRA"), Plaintiff provided a sworn certification that he purchased 100 shares of R&M stock on May 10, 2012 and another

100 shares on July 31, 2012, and subsequently sold 100 shares on August 14, 2012.[3] (Doc. 13-1 at ¶ 4). According to this statement, made under penalty of perjury, Plaintiff owned 100 shares of R&M stock. (*Id.*) Plaintiff filed a verified second amended complaint in November 2012, and a verified third amended complaint in March 2013, each reasserting his continued ownership of R&M shares and now purporting to proceed derivatively on behalf of R&M. (Docs. 40, 53).

The third amended complaint included new factual allegations related to the filing of R&M's Definitive Proxy Statement on November 30, 2012, the shareholder vote approving the merger on December 27, 2012, and NOVI's completion of the acquisition on February 20, 2013. (Doc. 53). Plaintiff demanded damages for the first time.

The Court denied Defendants' Rule 12(b)(6) motion to dismiss directed to Plaintiff's third amended complaint on August 27, 2013. (Doc. 66). With respect to the class and derivative claims for breach of fiduciary duty set forth in Counts V and VI, the Court observed that the allegations involved conduct occurring on or before the merger agreement on August 9, 2012 and that Plaintiff properly asserted a direct claim under Ohio law. (*Id.* at 14-15, 22-23). On February 3, 2014, Plaintiff filed a motion to certify a class consisting of all holders of R&M common stock from August 9, 2012 to February 20, 2013. (Doc. 77-1 at 1).

---

[3] Pursuant to the PSLRA,"[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that – (i) states that the plaintiff has reviewed the complaint and authorized its filing . . . [and] (iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2).

4

On March 12, 2014, nineteen months after filing suit, Plaintiff's counsel revealed that Plaintiff had sold all of his R&M shares on August 14, 2012, and, therefore, he did not own any shares throughout the entirety of this litigation. Defendants argue that Plaintiff lacked Article III standing when he filed his original complaint and move for dismissal pursuant to Rules 12(b)(1) and 12(h)(3).

## II.    STANDARD OF REVIEW

Defendants raise a factual attack on the jurisdiction alleged in the original complaint, and the Court may consider evidence such as affidavits and documents to determine the factual basis for jurisdiction. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Plaintiff bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## III.    STANDING

Defendants argue that Plaintiff lacked standing when he filed his original complaint and therefore this action must be dismissed in its entirety. "Article III standing is a jurisdictional requirement that cannot be waived, and such may be brought up at any time in the proceeding." *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) (citing Fed. R. Civ. P. 12(h)(3)). "While the proof required to establish standing increases as the suit proceeds, <u>the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.</u>" *Davis v. FEC*, 554 U.S. 724, 734 (2008) (emphasis supplied).

"The requirements of standing are: (1) 'an injury in fact'; (2) 'a causal connection' between the alleged injury and the defendants' conduct—that 'the injury . . . [is] fairly traceable to the challenged action . . . and not the result of the independent action of some third party not before the court'; and (3) redressability—that the injury will 'likely . . . be redressed by a favorable decision.'" *Klein v. U.S. Dep't of Energy*, 753 F.3d 576, 579 (6th Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61). "[A] plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "To demonstrate standing, a plaintiff must have alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." *Salazar v. Buono*, 559 U.S. 700, 711 (2010). The Article III standing requirement "assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

"The Article III standing requirements apply equally to class actions." *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005). There must be a "named plaintiff who has such a case or controversy at the time the complaint is filed and at the time the class action is certified." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). "Where the named

6

plaintiff's claim is one over which federal jurisdiction never attached, there can be no class action." *Crosby v. Bowater Inc. Ret. Plan for Salaried Emps. of Great N. Paper, Inc.*, 382 F.3d 587, 597 (6th Cir. 2004).

Here, the question is whether Plaintiff, the sole named plaintiff in this pre-certification class action, satisfied the requisites for Article III standing when he filed his original complaint on August 17, 2012. This entire action must be dismissed if he lacked Article III standing because jurisdiction never attached and cannot be cured by amendment or otherwise. Here, Plaintiff has no standing to make such a motion, and the Court likewise lacks jurisdiction to entertain it. *Zurich*, 297 F.3d at 532. Plaintiff concedes that he did not own R&M shares after August 14, 2012.[4] At issue is whether he satisfied injury in fact and redressability.

## IV. ANALYSIS

Plaintiff bears the burden of demonstrating standing for each claim asserted and for each form of relief sought in his original complaint. *DaimlerChrysler Corp.*, 547 U.S. at 352. Plaintiff submits that the breach of fiduciary duty claim in his original complaint was based on two actual injuries and sought redress in three forms of relief.

Plaintiff identifies two injuries that allegedly occurred before he sold his shares. First, Defendants injured him by depriving him of a fair sales process. According to Plaintiff, Defendants breached their fiduciary duties to him and all other shareholders by

---

[4] Defendants object to the exhibits attached to Plaintiff's memorandum *contra* (Doc. 80, Exs. A, B) and argue that Plaintiff has produced no admissible evidence proving that he <u>ever</u> owned R&M shares. Defendants observe that the attached account statements are not authenticated by affidavit and that Plaintiff has failed to demonstrate that he is the beneficial owner of the 100 shares in the account bearing his son's name.

undertaking a self-interested and flawed sales process in which Defendants "failed to take steps to maximize the value of R&M [by] failing to solicit other potential acquirors [*sic*] or alternative transactions"; "failed to properly value R&M"; and "ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Merger." (Doc. 2 at ¶ 63). Second, Plaintiff alleges that he suffered economic injury upon announcement of the merger price of $60 per share, and from the terms of the merger agreement itself, because this capped share value at the merger price. (*Id.* at ¶¶ 3, 53-55).

Plaintiff's only claim is for breach of fiduciary duty. Under Ohio law, the elements of a breach of fiduciary duty claim are: "(1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) injury proximately caused by the breach." *Garvais v. Reliant Inventory Solutions, Inc.*, 2:09-cv-389, 2012 U.S. Dist. LEXIS 131558, at *15 (S.D. Ohio Sept. 14, 2012). A director owes a fiduciary duty to the corporation. Ohio Rev. Code § 1701.59(B). The fiduciary duty is owed only indirectly to shareholders because "directors stand, roughly, as trustees over the corporation, administering it for the benefit of the beneficial owners, the shareholders."[5] *Radol v. Thomas*, 772 F.2d 244, 258 (6th Cir. 1980). A shareholder terminates the fiduciary relationship when he sells his shares. *Thompson v. Cent. Ohio Cellular, Inc.*, 639 N.E.2d 462, 469 (Ohio App. 1994).

---

[5] "[S]hareholders in a close corporation—corporations 'with few shareholders and whose corporate shares are not generally traded on a securities market'—owe each other a fiduciary duty to deal in utmost good faith." *Herbert v. Porter*, 845 N.E.2d 574, 578 (Ohio App. 2006) (quoting *Crosby v. Beam*, 548 N.E.2d 217, 220 (Ohio 1989)). "This situation is contrasted with an oppressed minority shareholder in a large publicly owned corporation who can more easily sell his shares in such a corporation." *Crosby*, 548 N.E.2d at 220. Plaintiff's actions make it clear that he fits into the latter category. *Palmer v. Fox Software, Inc.*, 107 F.3d 415, 419 (6th Cir. 1997).

To redress the alleged injuries to Plaintiff and the other shareholders. the original complaint sought "equitable relief only" in the form of an injunction, declaratory judgment, and the imposition of a constructive trust.  (Doc. 2 at ¶¶ 8, A-H).  However, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea*, 414 U.S. at 495-96.

Under Ohio law, a shareholder may bring a claim for breach of fiduciary duty against the corporation's directors as either a derivative or direct action, depending on the "nature of the alleged wrong rather than the designation used by plaintiffs."  *Grand Council of Ohio v. Owens*, 620 N.E.2d 234, 237 (Ohio App. 1993).  To determine whether the claim is derivative or direct, "a court must preliminarily determine if the pleadings state injury to the plaintiff upon an individual claim as distinguished from an injury which indirectly affects the shareholders or affects them as a whole."  *Adair v. Wozniak*, 492 N.E.2d 426, 428 (Ohio 1986).

The classification of a claim as derivative or direct is not dispositive of the Article III standing inquiry as they are distinct concepts.  *Gradeless v. Am. Mut'l Share Ins. Corp.*, 2011 U.S. Dist. LEXIS 31877, at *11 n.2 (S.D. Ind. Mar. 23, 2011).  Nonetheless, the principles underlying the distinction are helpful in determining whether Plaintiff established the injury-in-fact and redressability prongs for Article III standing.

Injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (citations omitted).  Redressability asks whether the injury will "likely

. . . be redressed by a favorable decision." *Id.* at 560-61. The focus of the inquiry is on the "effectiveness of the requested remedy" because "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97, 107 (1998).

The formulation of the derivative-direct distinction by the Supreme Court of Delaware, which succinctly states Ohio precedent,[6] closely tracks injury in fact and redressability: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). As stated by the Supreme Court of Ohio:

> A shareholder's derivative action is brought by a shareholder in the name of the corporation to enforce a corporate claim. Such a suit is an exception to the usual rule that a corporation's board of directors manages or supervises the management of a corporation. A derivative action allows a shareholder to circumvent a board's refusal to bring a suit on a claim. On the other hand, if the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action.

*Crosby*, 548 N.E.2d at 219.

---

[6] *Compare Tooley*, 845 A.2d at 1038 ("We . . . require the court to determine the nature of the action based on the '*nature of the wrong alleged*' and the *relief that could result*.") (emphasis supplied), *with Adair*, 492 N.E.2d at 428 ("[A] suit brought by a shareholder on a personal claim is distinguishable from a proceeding to recover damages or other *relief for the corporation*.") (emphasis supplied), *and Owens*, 620 N.E.2d at 237 ("In analyzing whether a complaint states a derivative claim or a direct claim, the court is required to look to the *nature of the alleged wrong* rather than the designation used by plaintiffs.") (emphasis supplied).

10

A derivative action is brought by a shareholder for "an injury sustained by, or a wrong done to, the corporation" and is "a proceeding to recover damages or other relief for the corporation." *Adair*, 492 N.E.2d at 428. Only a derivative claim exists if shareholders suffer indirect "injuries as a consequence of their positions as shareholders rather than individual claims they might have apart from their status as shareholders." *Id.* This distinction lies in the concept that any "indirect injury of the shareholders as a whole" merely results from their ownership interest in the corporation, which is the entity that suffered the actual injury:

> Where the defendant's wrongdoing has caused direct damage to corporate worth, the cause of action accrues to the corporation, not to the shareholders, even though in an economic sense real harm may well be sustained by the shareholders as a result of reduced earnings, diminution in the value of ownership, or accumulation of personal debt and liabilities from the company's financial decline. The personal loss and liability sustained by the shareholder is both duplicative and indirect to the corporation's right of action.

*Id.* at 429.

The right to bring a derivative suit on behalf of the corporation rests only with its shareholders because "the right of the plaintiff to maintain the action is derivative or secondary. The [presence of the] corporation is not a mere formality, … [because the corporation] … is an indispensable party to the action. The stockholder, as a nominal party, has no right, title or interest in the claim itself." *Owens*, 620 N.E.2d at 237. Rather, "it is the corporation, after all, that is suing. It is the corporation's action, only set in motion by the stockholders [and] for the benefit of the corporation." *Id.* at 238. In a

11

derivative action, the shareholders seeks to redress an injury in fact suffered by the corporation.

A direct action is appropriate "if the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation." *Crosby*, 548 N.E.2d at 219.  An injury to the shareholder is separate and distinct from injury to the corporation if it involves "one of the shareholder's contractual rights as a shareholder." *Carlson v. Rabkin*, 789 N.E.2d 1122, 1127-28 (Ohio App. 2003).  Violation of the statutory rights of a shareholder could also give rise to a direct claim. *Id*.  The remedy in a direct action is for the direct benefit of the shareholder to redress the individual injury.

These statutory and contractual rights inure only to present stockholders. *Danziger v. Luse*, 815 N.E.2d 658, 660 (Ohio 2004) (stating that Ohio laws "provide inspection rights only to shareholders.  Because [plaintiffs] do not own stock in the bank, we conclude that they do not have a statutory right to inspect the records of the bank.").  The owner of the shares as of the record date determines who is entitled to exercise the rights of a shareholder.  Ohio Rev. Code § 1701.45.

Applying these concepts to Plaintiff's original complaint, it is clear that Plaintiff lacked Article III standing.

First, Plaintiff only brought a breach of fiduciary duty claim.  "As a general proposition, actions for breach of fiduciary duty are to be brought in derivative suits." *Owens*, 620 N.E.2d at 238.  Breach of fiduciary duty claims are derivative in nature because "damage that results from the fraudulent or negligent management of the corporation is primarily damage to the corporation and to the corporate assets, and

12

because it affects the stockholders or members only indirectly and all of them alike." *Carlson v. Rabkin*, 789 N.E.2d 1122, 1127-28 (Ohio App. 2003). However, "an action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation." *NBD Bank, N.A. v. Fulner*, 109 F.3d 299, 301 (6th Cir. 1997). As a non-shareholder at the time he filed his original complaint, Plaintiff had no right to bring a suit in the name of R&M.

Second, Plaintiff's alleged actual injury is that Defendants deprived him of a fair sales process and caused economic injury to the value of his shares. Essentially, "[a]t the core of plaintiff's action for breach of fiduciary duty is the allegation that the price per share paid in the cash-out merger is inadequate because it is not the highest price that could have been obtained." *Stepak v. Schey*, 553 N.E.2d 1072, 1075 (Ohio 1990). Under Ohio law, "where plaintiffs allege that actions of fiduciaries have directly affected a corporation's value and thereby impaired shareholders' stock value, the appropriate action is a derivative suit brought on behalf of shareholders *as shareholders*." *Murray & Murray Co., L.P.A. Profit-Sharing Plan & Trust v. Performance Indus., Inc.*, 701 N.E.2d 475, 481 (Ohio Com. Pl. 1998). Thus, Plaintiff lacked Article III standing to maintain a derivative suit on behalf of R&M because he no longer held an ownership interest. The original complaint made clear that the directors had not scheduled the shareholder vote or determined the record date, meaning that Plaintiff had no contractual or statutory rights as a shareholder.[7] (Doc. 2 at ¶ 68). He therefore lacked any "personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." *Buono*, 559

---

[7] The directors ultimately fixed November 26, 2012 as the record date. (Doc. 60, Ex. A at 17).

13

U.S. at 711.  Plaintiff no longer had the right to complain of injury to R&M and could not share in any relief granted to it.  "An interest unrelated to injury in fact is insufficient to give a plaintiff standing.  The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right."  *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000) (citations omitted).  Here, Plaintiff had no legally protected right to protect from future harm.  The original complaint unambiguously did not seek monetary compensation.  (Doc. 2 at ¶ 8, 86) ("Plaintiff seeks to obtain a non-pecuniary benefit" and "seeks equitable relief only").

As the Sixth Circuit observed when it dismissed a derivative suit for lack of standing brought by a plaintiff who held minimal shares in the corporation, "[i]t is as though [plaintiff] had no equity investment to protect."  *Owen v. Modern Diversified Indus., Inc.*, 643 F.2d 441, 444 (6th Cir. 1981).  Here, it is undisputed that Plaintiff had no equity investment to protect.  He had lacked any "ongoing interest in the dispute," which is required to make a case "fit for federal-court adjudication."  *Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011).

Third, a direct claim for breach of fiduciary duty is also insufficient to demonstrate Article III standing.  The personal injuries Plaintiff alleged in his original complaint are that Defendants deprived him of a fair sale process and caused economic damage to the value of his shares.  When the Court looks at the "nature of the alleged wrong rather than the designation used," *Owens*, 620 N.E.2d at 237, Plaintiff merely alleges that Defendants breached their fiduciary duties to obtain the maximum price per share.  *Stepak v. Schey*, 553 N.E.2d 1072, 1075 (Ohio 1990) ("At the core of plaintiff's action

14

for breach of fiduciary duty is the allegation that the price per share paid in the cash-out merger is inadequate because it is not the highest price that could have been obtained."). Here, the terms in the merger agreement precluding other bids do not allege a direct injury to Plaintiff, rather the terms could only impact the corporate worth. *Henkel v. Aschinger*, 962 N.E.2d 395, 403 (Ohio Com. Pl. 2012) ("[O]nce one looks past the stock valuation that appears to be the predominant focus of plaintiffs' case, questions about the fairness of other terms in the proposed merger agreement like a no-shop provision or breakup fee also will be felt by all shareholders or charged to the corporation as a whole."). Moreover, "[d]epreciation in value of shareholder's corporate stock is generally not the type of direct personal injury necessary to sustain a direct cause of action." *Fulner*, 109 F.3d at 301.

Moreover, Plaintiff fails to demonstrate that his requested relief will redress this injury. Rule 8(f) mandates that "[p]leadings must be construed so as to do justice." "If a pleading provides a defendant notice of the plaintiff's claims and the grounds for the claims, omissions in a prayer for relief do not bar redress of meritorious claims." *Pension Ben. Guar. Corp. v. E. Dayton Tool & Die Co.*, 14 F.3d 1122, 1127 (6th Cir. 1994) (citation omitted). However, "[c]ourts will not conjure up a damages claim where none exists." *Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 407 (6th Cir. 2006).

Here, a liberal construction of the complaint reveals requests for injunctive and declaratory relief, as well as for the imposition of a constructive trust. "[T]he Supreme Court has held that a plaintiff's standing to seek injunctive or declaratory relief depends

on the likelihood of future harm." *Hange v. City of Mansfield*, 257 F. App'x 887, 891 (6th Cir. 2007). A mere "allegation of past injury is not sufficient to confer standing for declaratory or injunctive relief." *Cohn v. Brown*, 161 F. App'x 450, 455 (6th Cir. 2005).

It is undisputed that Plaintiff could only allege past injury. Accordingly, he lacked Article III standing to pursue injunctive or declaratory relief for his purely retrospective injury.

The final form of relief Plaintiff pled was the imposition of a constructive trust over any improper benefits Defendants received for their role in approving the merger agreement. "A constructive trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud" and "must be imposed on particular assets, not on a value." *Estate of Cowling v. Estate of Cowling*, 847 N.E.2d 405, 411-12 (Ohio 2006). "A constructive trust arises irrespective of the intention of the parties and is imposed when a person holding title to property is subject to an equitable duty to convey it to another on the ground that she would be unjustly enriched if she were permitted to retain it" and under Ohio law such a duty may arise if property is acquired "through a breach of fiduciary duty." *Brate v. Hurt*, 880 N.E.2d 980, 985 (Ohio App. 2007). "[A] constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." *Ferguson v. Owens*, 459 N.E.2d 1293, 1295 (Ohio 1984).

Here, even if the Court were to impose a constructive trust, it would provide no redress to Plaintiff. Plaintiff sought the imposition of a constructive trust over "any

16

benefits improperly received by defendants as a result of their wrongful conduct." (Doc. 2 at ¶ F). However, "a constructive trust is an equitable remedy that must be imposed on particular assets, not on a value." *Cowling*, 847 N.E.2d at 412. Additionally, "a constructive trust is not a right to recover on a debt owing; it creates a right to recover property wrongfully held." *Dixon v. Smith*, 695 N.E.2d 284, 291 (Ohio App. 1997). Only R&M and its shareholders had the right to recover any property subject to the constructive trust. *Nienaber v. Katz*, 43 N.E.2d 322, 325 (Ohio App. 1942) ("Any secret profit obtained by an officer or director *by reason of violation or disregard by him of obligations arising by reason of fiduciary relations* existing between him and the corporation, cannot be retained, but must be accounted for to the corporation.").

"Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co.*, 523 U.S. 83 at 107. Because Plaintiff voluntarily sold his shares before seeking relief in this Court, he lacked any "personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). The original complaint expressly and unambiguously provided that it "seeks equitable relief only, specifically to require R&M's Board to uphold their [*sic*] fiduciary duties to the Company's public stockholders" and "seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against defendants." (Doc. 2 at ¶¶ 8, 86). "[Plaintiff's] complaint unambiguously seeks only declaratory and injunctive relief, and this court cannot invent requests for damages that the plaintiff did not make." *Donkers v. Simon*, 173 F. App'x 451, 454 (6th Cir. 2006).

17

"[P]sychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co.*, 523 U.S. at 107. "Article III standing ultimately turns on whether a plaintiff gets something (other than moral satisfaction) if the plaintiff wins." *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 612 (6th Cir. 2007). Plaintiff has failed to meet his burden of demonstrating that the original complaint would have provided him anything more. Accordingly, Plaintiff lacked Article III standing at the initiation of this action.

## V. CONCLUSION

For the reasons stated here, Defendants' motion to dismiss (Doc. 78) is **GRANTED,** and this action is **DISMISSED** for lack of Article III standing.[8] The Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** in this Court.

**IT IS SO ORDERED**.

Date:     9/22/14                              *s/ Timothy S. Black*
                                               Timothy S. Black
                                               United States District Judge

---

[8] Plaintiff's motion for class certification (Doc. 77) is therefore terminated as moot.